IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES ROY HOLLIDAY, JR.,

                  **Plaintiff**,

v.

BANK OF AMERICA, N.A.,

                  **Defendant.**

Case No. 24-2458-DDC

## MEMORANDUM AND ORDER

In 1981, plaintiff James Roy Holliday, Jr., purchased a $1,500 certificate of deposit from Patron's State Bank & Trust in Olathe, Kansas. More than 40 years later, he attempted to redeem his CD from Patron's successor, defendant Bank of America, N.A. Finding no records of the CD, defendant refused to cash it. So, plaintiff filed this suit. He claims that defendant owes him more than $250,000—44 years of quarterly compounding interest at a 12% rate. He also asserts that defendant's refusals to pay the money violated the Kansas Consumer Protection Act.

The parties have filed cross motions for summary judgment. To spoil the ending, the court grants defendant's Motion for Summary Judgment (Doc. 38) in part, concluding that the Kansas statute of limitations bars most of plaintiff's breach-of-contract claim and that no reasonable factfinder could find that defendant committed an unconscionable act—as Kansas law requires for a KCPA claim. The court denies the rest of defendant's motion. And the court denies plaintiff's Motion for Partial Summary Judgment (Doc. 40) in its entirety. Also related to these motions, the court denies plaintiff's Motion to Strike (Doc. 45), which asks the court to

strike part of defendant's reply to its Motion for Summary Judgment. The court explains these outcomes, below, starting with the factual background.[1]

## I.     Background

The following facts are uncontroverted.

Plaintiff has a certificate of deposit (CD) that Patron's State Bank & Trust issued to "J. Roy Holliday, Jr., IRA Account." Doc. 37 at 2 (PTO ¶ 2.a.i.). The CD, dated June 11, 1981, is for $1,500. *Id.* The CD appears below:

---

[1]     The court notes two ways that plaintiff's briefing violated our court's local rules. *First*, when moving for partial summary judgment, plaintiff filed separate documents for his statement of facts and his legal arguments. Doc. 40 (facts); Doc. 41 (arguments). But the District of Kansas's local rules envision a single, unified brief, containing both purported facts and legal arguments. *See* D. Kan. Rule 56.1(a). *Second*, plaintiff filed two separate responses to defendant's Motion for Summary Judgment. Doc. 43; Doc. 43-1. One of these documents is titled "Plaintiff's Response to Defendant's Motion for Summary Judgment," Doc. 43 at 1, and the other is titled "Plaintiff's Suggestions in Opposition to Defendant's Motion for Summary Judgment," Doc. 43-1 at 1. Again, our court's rules permit one response—*i.e.*, a single filing—to oppose motions. *See* D. Kan. Rule 7.1(c) ("A party opposing a motion must file *a* response[.]" (emphasis added)); *see also Hampton v. Barclays Bank Del.*, 478 F. Supp. 3d 1113, 1142 (D. Kan. 2020) ("Our court's local rules limit briefing on motions to the motion (with memorandum in support), a response, and a reply."), *aff'd*, No. 20-3175, 2021 WL 3237082 (10th Cir. July 30, 2021). Violating court rules—especially by proliferating filings—needlessly drains judicial resources and undermines the efficient operation of our courts, hampering their ability to comply with Fed. R. Civ. P. 1. The court reminds plaintiff: Local rules aren't suggestions. They're binding mandates with "the force of law." *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (quotation cleaned up).

Plaintiff's counsel also filed a scanned copy of the CD in this case, which contains plaintiff's unredacted social-security number. *See* Doc. 40-1 at 1, 2. That filing appears to violate Fed. R. Civ. P. 5.2(a)(1), which requires parties to "include only the last four digits of the social-security number" in most instances. The court thus directs the Clerk of the Court to seal Doc. 40-1. And the court directs plaintiff to file a redacted version of Doc. 40-1 on this case's docket within 14 days of this Order.



Doc. 40-1 at 2 (redacted to conceal plaintiff's full social-security number).  Here's the small text

underneath the dollar amount on the CD:

> Payable to the Registered Holder hereof in current funds upon the surrender of this Certificate properly endorsed thirty months after date, or at any subsequent maturity date as hereinafter provided.

> It is understood and agreed that this Certificate shall be automatically renewed for an additional period of time equal to the original term hereof, dating from the first maturity date, and thereafter for similar periods of time equal to the original term, unless the Registered Holder hereof shall present this Certificate for payment at any maturity date, or 10 business days thereafter, or unless the Bank shall at least thirty days prior to any maturity, mail written notice to the Registered Holder, at the address appearing on the books of the Bank, of its decision to redeem this Certificate.  Not transferable except on the books of the depository institution.

> Interest at the rate of 12.00% per annum shall be paid to the Registered Holder hereof quarterly.  The rate of interest to be paid in future renewal periods may be changed effective the next maturity date by mailing to the Registered Holder, at the address appearing on the books of the Bank, notice of such change in rate at maturity.

*Id.*  Defendant stands as the successor by merger to Patron's, following several bank mergers.

Doc. 37 at 2 (PTO ¶ 2.a.ii.).

Other than the CD itself, there's practically no evidence of a contract between the parties. Plaintiff never has reported any income or interest on the CD to either the IRS or the Kansas Department of Revenue. *Id.* (PTO ¶ 2.a.iv.). He's never received a Form 1099 regarding income or interest on the CD from defendant or any of its predecessors. *Id.* (PTO ¶ 2.a.v.). Nor has he exchanged any correspondence with defendant or any of its predecessors prior to April 2024. *Id.* (PTO ¶ 2.a.vii., viii.). Plaintiff hasn't received any interest on the CD from defendant or any of defendant's predecessors. *Id.* (PTO ¶ 2.a.ix.). Plaintiff never asked defendant or any of its predecessors whether they were maintaining an account connected to the CD or whether they had any record of the CD. *Id.* (PTO ¶ 2.a.xi.). And no account statement from defendant or any of its predecessors ever has shown the CD exists or reported it. *Id.* (PTO ¶ 2.a.x.).

Still, armed with the CD itself, plaintiff tried to redeem it from defendant in April 2024. *Id.* (PTO ¶ 2.a.xii.). Defendant refused. *Id.* (PTO ¶ 2.a.xiii.). It conducted a review of its business records and active accounts but was unable to locate any account listed in plaintiff's name. Doc. 39-3 at 3 (Gainer Aff. ¶¶ 9, 12).

None of this is to say defendant never honors accounts originating from its predecessors. Through the series of mergers, some customer accounts originating with Patron's have transferred to defendant. Doc. 40-6 at 45 (Bowen Dep. 45:7–16). And defendant redeems CDs that its predecessors sold if defendant has records of those accounts. *See* Doc. 40-4 at 77 (Leyhue Dep. 77:5–23).

Plaintiff asserts two claims: one for breach of contract and one under the Kansas Consumer Protection Act (KCPA). Doc. 37 at 6 (PTO ¶ 4).

## II.    Legal Standard

Summary judgment is appropriate where the moving party demonstrates there is "no genuine dispute" about "any material fact" and that the movant is "entitled to judgment as a

4

matter of law." Fed. R. Civ. P. 56(a). This standard dictates that the court "view the evidence and make inferences in the light most favorable to the non-movant." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). Even if the non-moving party fails to respond adequately, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Kannady*, 590 F.3d at 1169

(quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144 F.3d at 671). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation cleaned up).

Federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

The court takes up defendant's Motion for Summary Judgment (Doc. 38) before analyzing the arguments in plaintiff's Partial Motion for Summary Judgment (Doc. 40).

## III.        Defendant's Motion for Summary Judgment

The court's analysis on defendant's Motion for Summary Judgment unfolds like this: The court begins with defendant's affirmative defenses—statute of limitations and then laches. Then, the court addresses defendant's arguments that no reasonable factfinder could find for plaintiff on his breach-of-contract and KCPA claims.

### A.        Statute of Limitations

The court concludes that the statute of limitations bars plaintiff's claims for interest due before September 10, 2018. Before explaining this conclusion, the court starts with a procedural issue raised in plaintiff's Motion to Strike (Doc. 45).

### 1.     Motion to Strike

After briefing on defendant's Motion for Summary Judgment (Doc. 38) was complete, plaintiff filed a Motion to Strike (Doc. 45). In it, plaintiff asserts that defendant raised new arguments—including one based on Kansas's statute of limitations—in its reply brief. Doc. 45 at 2–4. And plaintiff asks the court to strike these new arguments. The court declines.

Plaintiff had ample opportunity to respond to these arguments. For instance, he could have filed a motion asking for leave to file a sur-reply. Plus, defendant raised the same statute-of-limitations argument in its response to plaintiff's Motion for Summary Judgment. Doc. 42 at 12–13. Plaintiff could have responded to these arguments in his reply brief, but—oddly—elected not to file a reply brief at all. Finally, out of an abundance of caution, the court filed an Order under Fed. R. Civ. P. 56(f) notifying plaintiff that it was considering granting partial summary judgment on defendants' statute-of-limitations argument. Doc. 47. The court permitted plaintiff to file a supplemental brief on the issue, *id.*, and he did, Doc. 48. Because plaintiff has had an opportunity to make his case that the statute of limitations doesn't bar his claims, the court denies his Motion to Strike (Doc. 45).

The court now takes up the merits of defendant's statute-of-limitations argument.

### 2.     Law on Statute of Limitations

Two separate Kansas[2] statutes plausibly govern the parties' dealings here. So, the court considers them both.

---

[2]      The parties agree that Kanas law governs this action. Doc. 37 at 1 (PTO ¶ 1.d.). The court concurs. In diversity cases like this one, the court "applies the forum state's choice-of-law rules to determine which state's substantive law governs a claim." *Nordwald v. Brightlink Commc'ns, LLC*, 603 F. Supp. 3d 1030, 1040 (D. Kan. 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Kansas choice-of-law rules divide contract claims into two categories. They are: (1) disputes that go "to the substance of the obligation[;]" and (2) questions that go "to the manner and method of performance[.]" *Moses v. Halstead*, 581 F.3d 1248, 1252 (10th Cir. 2009) (applying Kansas choice of law rules); *see also Cent. Power Sys. & Servs., Inc. v. Universal Underwriters Ins. Co.*, 319 P.3d 562, 566

Start with the Kansas statute governing negotiable CDs.  Article 3 of the Uniform Commercial Code (UCC)—as adopted by Kansas—describes the statute of limitations for a CD like this:

> An action to enforce the obligation of a party to a certificate of deposit to pay the instrument must be commenced within six years after demand for payment is made to the maker, but if the instrument states a due date and the maker is not required to pay before that date, the six-year period begins when a demand for payment is in effect and the due date has passed.

Kan. Stat. Ann. § 84-3-118(e).  In short, a plaintiff has six years to bring a claim after demanding payment on a CD.  *See id.*

A second Kansas statute—one governing actions based on written contracts—also is relevant.  This statute says that an "action upon any agreement, contract or promise in writing" "shall be brought within five (5) years[.]"  Kan. Stat. Ann. § 60-511(1).  Under this statute, a "cause of action for breach of contract accrues when a contract is breached by the failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes."  *Pizel v. Zuspann*, 795 P.2d 42, 54 (Kan. 1990).

Plaintiff wants the former rule derived from the UCC to apply, which would mean the statute of limitations didn't start running until plaintiff demanded his CD in 2024.  Defendant would prefer that the latter apply.  The court concludes that the latter statute—the one setting the statute of limitations at five years after a breach—governs.  That's so because Article 3 of the UCC "applies to negotiable instruments."  Kan. Stat. Ann. § 84-3-102(a).  And a "promise or

(Kan. Ct. App. 2014) (same).  When the "dispute goes to the substance of the obligation," courts apply the "law of the state where the contract is made."  *Moses*, 581 F.3d at 1252.  When the dispute "goes to the manner and method of performance[,]" "the law of the place of performance applies."  *Id.*  The dividing line between these categories is a bit elusive.  *Id.*; Restatement (First) of Conflict of Laws § 358 cmt. b (A.L.I. 1934).  But under either approach, Kansas law governs.  This dispute centers on a CD sold by a Kansas bank to a Kansas resident who sought to redeem the CD in Kansas.  Thus, Kansas is both the state where the parties contracted and the place of performance.  So, Kansas law governs this action.

order . . . is not a[] [negotiable] instrument if, at the time it is issued . . . it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this article." Kan. Stat. Ann. § 84-3-104(d).

Here, the CD contains conspicuous notice in the bottom left corner that says, "Not Negotiable." Doc. 40-1 at 1, 2. So, it's not a "negotiable instrument." And the statute of limitations found in Article 3 doesn't govern.[3] *See Trader v. Comerica Bank*, 809 N.W.2d 429, 433 (Mich. Ct. App. 2011) ("[T]he trial court properly concluded that the CDs are, by their terms, nonnegotiable and not governed by article 3 of the UCC. Rather a nonnegotiable CD is a contract and is governed by contract law." (quotation cleaned up)); *Baker v. First Am. Nat'l Bank*, 111 F. Supp. 2d 799, 803 (W.D. La. 2000) ("[T]here appears to be little question that a CD that bears a conspicuous statement that it is nontransferable is, therefore, not a negotiable instrument and not governed by Article 3.").

The five-year statute of limitations found in Kan. Stat. Ann. § 60-511(1) thus governs plaintiff's breach-of-contract claim—a point plaintiff never contests, *see generally* Doc. 48. With that governing principle identified, the court next analyzes defendant's statute-of-limitations defense.

### 3.    Analysis

The court concludes that defendant's statute-of-limitations defense bars any claim for interest due before September 10, 2018. The court explains.

To determine when plaintiff's claims accrued, the court must first interpret the language of the contract—the CD—to determine when plaintiff's claim alleges defendant (or its

---

[3]    Also, Kansas didn't adopt Article 3 of the UCC until 1991, a decade after defendant's predecessor issued the CD to plaintiff. *See* 1991 Kan. Legis. Serv. 262 (West). Because this Article doesn't govern the CD, the court needn't decide whether and when a statute of limitations enacted after parties form a contract governs claims for breach of that contract.

predecessors) breached.  "The primary rule for interpreting written contracts is to ascertain the parties' intent." *Trear v. Chamberlain*, 425 P.3d 297, 301 (Kan. 2018) (quotation cleaned up). "If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction." *Id.* (quotation cleaned up). "[I]nterpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners." *Harding v. Capitol Fed. Sav. Bank*, 577 P.3d 553, 557 (Kan. 2025) (quotation cleaned up).

Based on the plain language of the CD, plaintiff's claims for interest first accrued three months after the CD issued and continued to accrue every three months after that initial accrual. In definite terms, the CD obligated the bank—defendant or its predecessors—to pay interest to plaintiff quarterly:  "Interest at the rate of 12.00% per annum shall be paid to the Registered Holder hereof quarterly."  Doc. 40-1 at 2.  This contractual language is clear and mandatory. These terms required the bank to pay out interest to plaintiff on a quarterly basis.  In other words, the CD unambiguously required defendant or its predecessors to perform—by paying interest— every three months after the CD issued.

This construction of the contract means that—based on plaintiff's theory of his claim— defendant and its predecessors have breached the CD on an ongoing basis.  They breached the contract by failing to pay interest to plaintiff—either directly or by redepositing the interest into the CD or another of plaintiff's accounts—in September 1981, three months after the CD issued. *See Thorpe v. Bank of Am., N.A.*, No. 19-cv-00282-LMM, 2022 WL 2784789, at *6 (N.D. Ga. June 7, 2022) (concluding that bank breached when it—among other indicia of breach— "stopped paying the interest on the Certificates").  And they have continued to breach the

contract every three months after September 1981. Plaintiff's claims for these breaches accrued separately, when they occurred. *See Sharp v. Sharp*, 117 P.2d 561, 563 (Kan. 1941) ("The rule is firmly established that when recovery is sought on an obligation payable by installments, the statute of limitations runs against each installment from the time it becomes due[.]"); *Curry v. Kan. & C. P. Ry. Co.*, 48 P. 579, 583 (Kan. 1897) (explaining that for installment contracts, "suits may be brought to recover for successive and separate breaches"). Kansas law is clear that a breach-of-contract claim accrues when the breach occurs. *Law v. Law Co. Bldg. Assocs.*, 289 P.3d 1066, 1080 (Kan. 2012) ("A cause of action for breach of contract accrues on the date of breach, not the date of discovery[.]"); *Pizel*, 795 P.2d at 55 (same). So, plaintiff's original breach-of-contract claim accrued in September 1981—and his claims for interest subsequently have accrued every three months after September 1981.

Plaintiff makes three arguments to the contrary. He asserts that because the CD says "IRA Account" on it, the court should interpret the CD not to require defendant to pay any money to plaintiff until he attempted to redeem it. Plaintiff also argues that the CD's interest provision doesn't specify when or how the bank must distribute the interest, so the court should apply the CD's redemption clause to the principal and interest alike. Finally, plaintiff contends that the contract is ambiguous, and the court must construe it in his favor, against the bank. The court isn't persuaded by any of these arguments. Take plaintiff's counterarguments in turn.

### a.    IRA Account

Plaintiff first argues that because the CD says "IRA Account" on it, the parties must have intended for the bank not to pay plaintiff until he redeemed the CD at retirement, granting plaintiff a few additional decades of statute-of-limitations wiggle room. Doc. 48 at 6–8. The court finds no such significance into the phrase "IRA Account."

11

The CD here didn't create an individual retirement account (IRA).  An IRA is a type of trust.  *See* 26 U.S.C. § 408(a).  The "written governing instrument creating the [IRA] trust" must meet certain criteria, including listing a bank as the trustee and offering an assurance that no "part of the trust funds will be invested in life insurance contracts."  *Id.*  The CD here doesn't include any such provisions.  *See* Doc. 40-1 at 2.  So, it didn't create an IRA.  *See Hollenbeck v. Household Bank*, 829 P.2d 903, 907 (Kan. 1992) ("[T]he 1987 IRA CD could not itself establish a qualified IRA because it did not contain the provisions required by I.R.C. § 408 (1987).").  What's more, the CD here didn't create a trust.  *See* Kan. Stat. Ann. § 58a-401 (outlining methods of creating a trust); *see also State ex rel. Sorensen v. Am. State Bank*, 252 N.W. 460, 462 (Neb. 1934) (explaining that "a deposit represented by a time certificate of deposit is a general deposit, and not a trust").  To put it simply, you can't create an IRA just by slapping the words "IRA Account" onto a CD.  The CD here met none of the requirements for creating an IRA.  The CD also suggests that the IRA already existed when it issued.  The CD says that "J. Roy Holliday, Jr., IRA Account has deposited $1,500[.]"  Doc. 40-1 at 2.  How can a trust make a deposit if it isn't yet in existence?

The court thus concludes listing the words "J. Roy Holliday, IRA Account" on the CD reflects the parties' intent to make plaintiff's IRA—a trust—the registered holder of the CD.  They do not—indeed, they could not—reflect their intent to create an IRA account, as plaintiff argues.  Doc. 48 at 4.  So, plaintiff's argument withers.  True, the parties intended for the bank to pay interest on the CD into an IRA.  *See* Doc. 48 at 8.  But that doesn't say anything about the parties' intent that plaintiff redeem the interest payments at a specific time—*i.e.*, upon retirement.  Listing an IRA on the CD merely means that the designated IRA would receive the interest payments.  Those interest payments came quarterly, and so that's when breach occurred.  There's

simply no support for plaintiff's view that including the words "IRA Account" in a blank on the CD meant that the parties thought that the interest provision didn't require the bank to pay interest until plaintiff redeemed the CD.

Relatedly, plaintiff asserts that defendant automatically rolls interest back into a CD to compound as a matter of course. *Id.* Plaintiff's support for this proposition is sorely lacking. Defendant's representative never testified that this process happens automatically. She explained that "if the client didn't want to get taxed on the interest he made on his CD," the defendant would roll the interest back into the CD. Doc. 40-4 at 39 (Leyhue Dep. 39:8–16). Regardless, defendant's explanation about its *current* processes aren't relevant to what the CD—signed by the parties more than 44 years ago—means. And plaintiff hasn't explained why the court should consult industry standards when interpreting an unambiguous contract. *See Havens v. Safeway Stores*, 678 P.2d 625, 639 (Kan. 1984) (explaining that "custom and usage may be shown to elucidate or explain something ambiguous about a contract" but declining to invoke this principle where the contract language was "clear and definite" (quotation cleaned up)).

In sum, plaintiff's first attempt to avoid the rule that the statute of limitations began to run when the bank failed to pay interest falls flat on its face.

###    b.    Pay or Distribute

Plaintiff next argues that the CD's interest provision didn't require the bank to distribute the interest. Doc. 48 at 8. In other words, plaintiff interprets the contract to call for the bank to pay out both principal and interest when the registered holder presented the CD. Under such an interpretation, plaintiff argues, defendant didn't breach until it refused to redeem the CD in April 2024.

The court rejects plaintiff's interpretation of the CD. The CD's structure suggests that the redemption clause just applies to the $1,500 principal. It reads this way: "J. Roy Holliday,

Jr., IRA Account has deposited . . . $1,500.00 Payable to the Registered Holder in current funds upon the surrender of this Certificate properly endorsed thirty months after date, or at any subsequent maturity date as hereinafter provided." Doc. 40-1 at 2. This CD provision provides that the $1,500 plaintiff initially deposited were payable when plaintiff surrendered the CD. It doesn't say that the principal *and interest* were payable upon surrender.[4] This interpretation is especially sound because a separate provision of the CD specifies how the bank would pay interest. *Id.* ("Interest at a rate of 12.00% per annum shall be paid to the Registered Holder hereof quarterly."). The payment of interest didn't require plaintiff to surrender the CD—or do anything else. And under Kansas law, a specific contract provision controls over a general one. *Exchange State Bank v. Kan. Bankers Sur. Co.*, 177 P.3d 1284, 1285 (Kan. Ct. App. 2008). So, the specific provision specifying the bank's unconditional duty to pay interest strongly suggests that the redemption provision doesn't address interest.

Another well-established canon of contract construction counsels against plaintiff's interpretation. The CD uses the same root word—"pay"—to describe the bank's duty when plaintiff surrendered the CD and also to describe its duty to pay interest. *Compare* Doc. 40-1 at 2 ("*Payable* to the Registered Holder hereof in current funds upon the surrender of this Certificate[.]" (emphasis added)), *with id.* ("Interest at the rate of 12.00% per annum shall be *paid* to the Registered Holder hereof quarterly." (emphasis added)). Despite this consistency, plaintiff ascribes different meanings to these conjugations of "pay." He asserts that the first conjugation of pay implies distribution while the latter implies compounding. Such a

---

[4]     The term "current funds" specifies the *manner*, not the *amount*, of payment. *E.g.*, *Fund*, Black's Law Dictionary (12th ed. 2024) (defining "current funds" as "[a]ssets that can be readily converted into cash"); *Bull v. First Nat'l Bank of Kasson*, 123 U.S. 105, 112 (1887) ("The term 'current funds' has been used to designate . . . legal tender.").

construction runs afoul of the well-established canon that "identical contract language means the same thing across the whole contract." *P.I. & I. Motor Express, Inc. v. RLI Ins. Co.*, 40 F.4th 398, 409 (6th Cir. 2022) (applying Ohio law); *see also Martin v. Bd. of Cnty. Comm'rs*, 848 P.2d 1000, 1006–07 (Kan. Ct. App. 1993) (requiring phrase to "have the same meaning each time it appears"); *Auriga Polymers Inc. v. PMCM2, LLC*, 40 F.4th 1273, 1285 (11th Cir. 2022) ("A word is presumed to bear the same meaning throughout a text." (citing Antonin Scalia & Bryan A. Garner, *Reading Law* § 25 (2012))).  Plaintiff interprets "paid" to mean compounded while interpreting "payable" to mean distributable.  The court rejects this confused reading of the plain terms of the CD.

### c.    Construction Against Drafter

Finally, plaintiff invokes the principle that courts should construe contracts against their drafters.  "When a court properly finds a contract to be ambiguous, the court must construe that ambiguity against the drafter." *Harding*, 577 P.3d at 559.  But here's the problem with this argument:  there's no ambiguity to construe.  The CD sets out when interest was due in plain and unconditional terms. *See* Doc. 40-1 at 2.  What's more, even if the CD were ambiguous, it's not clear that construing it against the drafter results in interpreting it the way plaintiff wants.  To be sure, it helps plaintiff now if the court construes the contract as one not requiring the bank to disburse interest until he made a demand.  But receiving the interest at the time the CD called for the bank to pay it would also confer advantages on plaintiff.  It would have allowed him to put that money to use.  And—though this point perhaps seems ironic now—it provided him a clear point in time when he knew the bank had breached the contract and thus his legal right had accrued. *See Samson Expl., LLC v. Bordages*, 694 S.W.3d 195, 209 (Tex. 2024) (explaining that provision that dictated when interest was "due and payable" created "a fixed point from which

[the creditors] could assess the maturation of their legal rights to collect any unpaid late charges and to seek other contractual remedies").[5]

So, the five-year statute of limitations applies to plaintiff's claims for interest. But there's an additional wrinkle here. "The Kansas Supreme Court issued Administrative Order 2020-PR-016 on March 19, 2020." *PHH Mortg. Corp. v. Stuber*, 766 F. Supp. 3d 1162, 1171 (D. Kan. 2025).[6] "This Order suspended all statutes of limitations and statutory time standards or deadlines." *Id.* at 1171–72 (quotation cleaned up). "After this Order, statutes of limitation and deadlines continued to be extended or suspended until April 15, 2021, when Kansas Supreme Court Administrative Order 2021-PR-020 lifted the suspension for most deadlines and time limitations." *Id.* at 1172 (quotation cleaned up). These Kansas Supreme Court orders thus "stopped the timeclock" for the 392 days between March 19, 2020, and April 15, 2021. *Id.*

---

[5]     Though plaintiff never made this argument, the court addresses one other possible counterargument. The weight of authority holds that the statute of limitations for a certificate of deposit doesn't run until the holder makes a demand on the bank. *E.g.*, *Yahn & McDonnell, Inc. v. Farmers Bank of State of Del.*, 708 F.2d 104, 107 (3d Cir. 1983) ("A long line of authority holds that for the purpose of determining when the limitations period begins to run, a certificate of deposit, in contrast to a simple promissory note, is not considered due until a demand for payment has been made."). But this generic case law about certificates of deposit can go only so far. At bottom, the CD in this case is a contract. Its precise terms govern the rights and obligations of the parties. *See, e.g.*, *Holloway v. Wachovia Bank & Tr. Co., N.A.*, 423 S.E.2d 752, 757 (N.C. 1992) ("A certificate of deposit is a bank's promissory note, payable only according to its terms." (quotation cleaned up)). And the CDs in the cases explaining the general accrual rule simply used different language than the CD here uses—*i.e.* they didn't require the bank to pay the interest before the CD reached maturity. So, the court concludes that plaintiff (rightly) declined to cite these cases because cases about certificates of deposit considered in the abstract say little about this case. They say little because the conditions about the CD's obligations depend on the terms of the particular CD at issue. Regardless, the court's interpretation is consistent with the weight of authority; plaintiff's claim for the *principal* he deposited didn't accrue until he demanded the bank pay him that principal.

[6]     The court takes judicial notice of Kansas Supreme Court Administrative Order 2020-PR-016 and Kansas Supreme Court Administrative Order 2021-PR-020. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (concluding court may "take judicial notice of . . . facts which are a matter of public record" (quotation cleaned up)).

(quotation cleaned up). As such, the statute of limitations bars plaintiff's claims for interest due before September 10, 2018—*i.e.*, five years plus 392 days before plaintiff filed this action.

Defendant is the under the impression that its statute-of-limitations defense is a complete defense—game, set, match. Not so. Defendant misses that plaintiff's interest claims accrued separately, with each breach. Saying it another way, each time defendant failed to pay interest on the CD represents a separate breach, with its own five-years-plus-392-days clock. So, defendant is entitled only to partial summary judgment, and the court denies defendant's request for summary judgment on plaintiff's breach of contract claims based on interest payments due after September 10, 2018. Plaintiff's claims for interest due on or after September 10, 2018, are timely. Likewise, because the CD was renewable automatically, plaintiff's claim for the $1,500 principal also is timely.

The court turns to defendant's second affirmative defense, laches, next.

### B.    Laches

Defendant argues that the doctrine of laches bars plaintiff's claims in their entirety. Doc. 39 at 8–11. As defendant tells it, plaintiff took too long to demand payment on his CD, and equity requires the court to dismiss his breach-of-contract claim based on this delay. The court disagrees. Especially in view of its statute-of-limitations ruling, the court finds "little room for application of the equitable doctrine of laches." *Boucek v. Boucek*, 305 P.3d 597, 603 (Kan. 2013).

"Laches is the neglect or omission to assert a right as, taken in conjunction with lapse of time and other circumstances, causes prejudice to an adverse party." *Capitol Fed. Sav. & Loan Ass'n, Inc. v. Glenwood Manor, Inc.*, 686 P.2d 853, 856 (Kan. 1984). But laches is disfavored. *See Boucek*, 305 P.3d at 603. And it's especially disfavored when the statute of limitations hasn't expired. *See id*; *In re Marriage of Doud & Modrcin*, 480 P.3d 800, 808 (Kan. Ct. App.

2020) ("[C]ourts have generally held that laches cannot be used to bar claims incurred within a limitations period set by statute.").  Put simply, Kansas law dictates that "courts should exercise caution when using equitable principles to extinguish legal rights—particularly when the timeframe for enforcing those rights is defined by statute." *In re Marriage of Doud & Modrcin*, 480 P.3d at 808; *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 (2014) ("[L]aches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation.").  Whether to apply laches is committed to the court's discretion. *Ten Eyck v. Harp*, 419 P.2d 922, 926 (Kan. 1966).

Here, the court, in its discretion, declines to grant summary judgment to defendant on its laches defense.  Because plaintiff's claims—at least in part—fall within the statute of limitations set by the legislature, defendant's request for laches starts on shaky ground. *See Boucek*, 305 P.3d at 603.  What's more, the court's statute-of-limitations ruling already truncates the oldest parts of plaintiff's claim.  And that ruling limits the prejudice defendant might experience from plaintiff's delay in asserting his claim.

To avoid this outcome, defendant relies on *Schnack v. Valley Bank of Nevada*, 291 F. App'x 168 (10th Cir. 2008).  There, the Tenth Circuit affirmed a district court's post-trial finding that plaintiff had redeemed his CD already. *Id.* at 172–73.  It also upheld the district court's alternative holding that laches barred plaintiff's claims. *Id.* at 173.  That case says little that matters to this case. *Schnack* isn't binding; it's unpublished.  And it doesn't apply Kansas law.  Plus, the CD in *Schnack* didn't have a provision that made it renew automatically. *See generally id.*  So, unlike here, the *Schnack* plaintiff had no reason to leave his money sitting in the bank.  Defendant hasn't offered any other compelling argument for applying laches, especially when

plaintiff's only timely claims have accrued in the last decade.  In short, the court won't grant summary judgment against plaintiff's contract claim based on laches.[7]

### C.    Contract

Defendant next argues that it deserves summary judgment because no contract exists between the parties.  Doc. 39 at 11–12.  Defendant argues that it never acknowledged any agreement with plaintiff and never communicated with him about the CD.  *Id.*  And so, defendant maintains, no reasonable factfinder could conclude that plaintiff has a contractual relationship with defendant.  The court rejects this fanciful interpretation of the summary judgment facts.

Plaintiff has adduced evidence that he purchased a CD from Patron's—the very document shown on p. 3.  The parties agree that defendant is a successor by merger to Patron's. Doc. 37 at 2 (PTO ¶ 2.a.ii.).  And the parties agree that defendant redeems CDs that its predecessors issued if it has records of those accounts.  *See* Doc. 43-1 at 5 (asserting this fact); *see generally* Doc. 44 (not controverting this fact).  Taking these facts in the light most favorable to plaintiff, a reasonable factfinder could conclude that plaintiff entered a contract with Patron's and that defendant assumed the obligations of this contract.  Defendant thus doesn't deserve summary judgment against plaintiff's breach-of-contract claim.

---

[7]      In his motion, plaintiff also moved for summary judgment against defendant's laches defense. Doc. 41 at 8–10.  But his argument turns entirely on his position that the parties believed that defendant wouldn't receive any distribution from the CD for decades.  *Id.* at 9.  Because the court already has rejected this construction of the CD, the court also denies plaintiff's request for summary judgment against defendant's laches defense because plaintiff hasn't carried his burden to show that he's entitled to judgment as a matter of law on that defense.  Should defendant reraise its laches defense at trial, the court will decide the issue then, with the benefit of all trial evidence.

D.     **KCPA Claim**

Defendant also has moved for summary judgment on plaintiff's KCPA claim, advancing

three arguments.  *First*, defendant argues that the KCPA doesn't apply to it because a pre-2019

version of the statute excluded banks.  *Second*, according to defendant, it's not a "supplier" and

so can't incur liability under the KCPA.  And *third*, defendant argues that it didn't commit any

unconscionable act.  The court agrees with defendant's third argument and grants summary

judgment against plaintiff's KCPA claim.  Because the court agrees with defendant's third

argument, it declines to take up the first two.

Defendant argues that it deserves summary judgment against the KCPA claim because

the summary judgment facts permit no reasonable finding that it ever engaged in an

unconscionable act.  Whether an act or practice is unconscionable is a question for the court.

Kan. Stat. Ann. § 50-627(b).  The KCPA doesn't define unconscionability.  But it instructs

courts to consider a series of factors.  *See id.*  Plaintiff hinges his claim here on one factor in

particular:  "'the consumer was unable to receive a material benefit from the subject of the

transaction[.]'"  Doc. 43-1 at 20 (quoting Kan. Stat. Ann. § 50-627(b)(3)).  Defendant, for its

part, argues that unconscionability requires deception and unequal bargaining power, neither of

which the summary judgment facts can support.  Doc. 39 at 14.  Defendant has the better of this

argument.

The Kansas Supreme Court has explained that an "unconscionable act or practice requires

both supplier deception and unequal bargaining power."  *Via Christi Reg'l Med. Ctr., Inc. v.

Reed*, 314 P.3d 852, 867 (Kan. 2013).[8]  Plaintiff has adduced zero evidence that defendant

---

[8]      A recent Kansas Court of Appeals case may cast some doubt on this dual requirement.  *See
Alenco, Inc. v. Warrington*, 560 P.3d 586, 599 (Kan. Ct. App. 2024) ("Unconscionable conduct is not
necessarily deception; it can also include overreaching." (quotation cleaned up)).  But even if it does, the
court is duty bound to follow the Kansas Supreme Court's expression of Kansas law.  *See Animal Sci.*

engaged in any deception.  Defendant thus is entitled to summary judgment against this KCPA

claim.  *See Doe v. Lyft, Inc.*, 756 F. Supp. 3d 1110, 1125 (D. Kan. 2024) (dismissing KCPA

unconscionability claim where plaintiff failed to allege defendant acted deceptively); *Lubberts v.*

*4 Life Weight Loss Ctrs. Inc.*, 421 P.3d 775, 2018 WL 3320197, at *5–6 (Kan. Ct. App. 2018)

("Without a finding of deception, there is no basis for an unconscionable act and practice

claim."); *see also Bovarnick v. Fleet Nat'l Bank*, 840 N.E.2d 549, 552 (Mass. Ct. App. 2006)

(finding no unfair or deceptive practice where bank refused to redeem CD).

Plaintiff argues that *Via Christi*'s statement—that "an unconscionable act or practice

requires both supplier deception and unequal bargaining power[,]" 314 P.3d at 867—applies only

to the facts of that case.  Doc. 43-1 at 20.  The court disagrees.  The Kansas Supreme Court made

that statement when explaining the legal background of the KCPA.  *Via Christi*, 314 P.3d at 867.

And later, it reiterated the principle by citing two earlier supreme court decisions.  *Id.* at 868

(collecting cases for the proposition that "unconscionability requires some element of deceptive

bargaining conduct present as well as unequal bargaining power" (quotation cleaned up)).  And it

included a statement in the syllabus of the case suggesting that unconscionability requires

"deceptive conduct by the supplier plus unequal bargaining power between the supplier and the

consumer[.]"  *Id.* at 855.  In short, there's nothing about *Via Christi*'s explanation of Kansas law

implying that it's restricted to the particular facts of the case.

Because plaintiff hasn't adduced any record evidence that defendant acted deceptively,

no reasonable jury could find that defendant's conduct was unconscionable.  So, defendant

deserves summary judgment against plaintiff's KCPA claim.

---

*Prods., Inc. v. Hebei Welcome Pharma. Co.*, 585 U.S. 33, 44 (2018) ("If the relevant state law is
established by a decision of the State's highest court, that decision is binding on the federal courts."
(quotation cleaned up).  And plaintiff—though he filed two summary-judgment responses—never cites
*Alenco*.  *See generally* Doc. 43; Doc. 43-1.

The court now turns to plaintiff's Partial Motion for Summary Judgment (Doc. 40).

## IV.        Plaintiff's Partial Motion for Summary Judgment (Doc. 40)

Plaintiff has moved for partial summary judgment.  He asks for summary judgment on his breach-of-contract claim.  And he separately asks the court to find—as a matter of law—that the CD calls for compound interest, not simple interest.  The court declines both requests, so it denies plaintiff's Motion for Partial Summary Judgment (Doc. 40) in its entirety.  The court explains, starting with plaintiff's breach-of-contract claim.

### A.        Breach-of-Contract Claim

Plaintiff first moves for summary judgment on his breach-of-contract claim.  But he doesn't deserve it.  A reasonable factfinder could conclude that plaintiff doesn't have an outstanding contractual relationship with defendant.

Plaintiff asserts he never received any statements of interest.  Defendant conducted a search of its records and located nothing.  A reasonable jury could view all these facts and find (or infer) that the CD in this case is not outstanding.  That jury, for instance, could conclude that defendant or ones of its predecessors redeemed the CD and subsequently had destroyed records of that redemption.  *See Schnack*, 291 F. App'x at 172 ("[T]he fact that there were no statements related to his CD during that time supports the court's conclusion that the CD was redeemed[.]").  In short, "the dueling evidence on the contract claim—[plaintiff's] presentation of the original certificate and [defendant's] proffer that it has no records of the account—create[] a question of fact for a jury to resolve." *WesBanco Bank, Inc. v. Ellifritz*, 889 S.E.2d 682, 691 (W. Va. 2023) (affirming denial of motion for judgment as a matter of law because plaintiff still preserved original certificate of deposit but bank lacked any records for it, so fact issue remained); *Estate of English v. Regions Bank*, 184 So.3d 983, 987 (Miss. Ct. App. 2015) (reversing summary

judgment granted to bank but observing that the factfinder "might very well determine that the CD was redeemed without presentation of the original certificate").

The parties dispute whether one of defendant's predecessors could have redeemed the CD without requiring plaintiff to surrender it. No doubt, the terms of the CD suggest that plaintiff had to surrender the CD to redeem it. *See* Doc. 40-1 at 2. But the CD also suggests that the bank could redeem the CD by mailing notice to plaintiff. *See id.* And although plaintiff has testified that he never received any mail from defendant or its predecessors terminating the CD, a rational factfinder—in light of the absence of any record of the matter—could doubt that testimony. Also, other courts have found that a fact issue exists in these exact circumstances—when the face of a CD requires the holder to surrender the CD yet the bank has no records of it. *E.g.*, *WesBanco*, 889 S.E.2d at 691; *English*, 184 So.3d at 987. Granted, those cases involved banks moving for judgment. But the point remains. A rational factfinder can infer an account doesn't exist any longer based on the absence of records.

So, a reasonable factfinder could conclude that plaintiff redeemed the CD or that plaintiff otherwise didn't have a valid and outstanding CD to redeem from defendant. Summary judgment thus isn't appropriate on plaintiff's breach-of-contract claim.

### B. Compound Interest

Plaintiff also asks for summary judgment on whether interest earned on the CD compounded. Doc. 41 at 4–7. Plaintiff offers two arguments to support his interpretation of the CD. *First*, plaintiff argues that CD specifies "quarterly" payment intervals, which suggests that the interest compounds. *Second*, plaintiff argues that compounding interest reflects the industry standard, which the court may consult to interpret an ambiguous contract. Defendant, for its part, says that plaintiff only has offered evidence about modern-day industry custom—but nothing about industry custom in the 1980's. Defendant also argues that the CDs mandate that

23

interest "shall be paid to" Mr. Holliday implies that interest isn't compounded. Plaintiff has failed to carry his burden to prove he's entitled to judgment as a matter of law on this issue.

Plaintiff's argument about the inclusion of the word "quarterly" fails to persuade. To understand plaintiff's argument, consider the formulas for calculating compound interest and simple interest. One can calculate compound interest on an account using this formula:

$$I = P \left(1 + \frac{r}{n}\right)^{nT} - P$$

where I is interest, P is principal, r is the annual interest rate, n is the number of compounding periods per year, and T is the time in years. *Samson Expl.*, 694 S.W.3d at 208 n.50. In contrast, the formula to calculate simple interest is this:

$$I = PrT$$

where the variables mean the same thing as above. *Id.* at 208 n.51. Plaintiff's argument is that because the compounding formula includes a variable for compounding periods per year (n) and the simple interest formula does not, the CD's inclusion of the compounding period— quarterly—implies compounding interest. Doc. 41 at 5–6. This argument, though an interesting one, isn't compelling.

To be sure, an "'interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable.'" *Vandonsel-Santoyo v. Vasquez*, 431 P.3d 903, 2018 WL 6580489, at *5 (Kan. Ct. App. 2018) (quoting 11 *Williston on Contracts* § 32.5 (4th ed. 2018)). So, plaintiff's argument might hold some water if he were right that a simple-interest interpretation would render the inclusion of the word "quarterly" meaningless. But it wouldn't. To the contrary, the straightforward meaning of the interest provision specifies when the bank had to pay interest. *See Samson Expl.*, 694 S.W.3d at 208–09 ("[T]he most standard reading of a clause that demands payment 'monthly' or

'annually' is that it merely specifies the time for payment."). The interest clause sets out the parties' expectations about when earned interest would transfer hands. And that transfer, of course, is significant because once the CD holder received the interest, he was free to reinvest that money or dispose of it however he saw fit. It also set the time for "maturation of [plaintiff's] legal rights to collect any unpaid" interest. *Id.* at 209. In short, interpreting the contract to call for simple interest doesn't render the word "quarterly" meaningless. So plaintiff's argument is untenable.

The weight of authority supports this conclusion. Courts routinely have rejected the argument that a clause specifying when interest is due implies compound interest. *E.g.*, *id.* ("[W]hile periodic rests are indeed a feature of agreements to compound rates of interest, courts will not impose the harsh penalty of a compound rate by gleaning such periodic rests from ordinary or ambiguous temporal language that could also refer to a simple rate of interest." (footnote omitted)); *Cherokee Nation v. United States*, 270 U.S. 476, 491–92 (1926) (rejecting argument contract term that said "interest on all said funds shall be paid semiannually" required compound interest). And relatedly, plaintiff hasn't cited any cases—nor could the court locate any—holding that such a clause requires compounding growth. To the contrary, states overwhelmingly disallow compound interest barring an express provision to the contrary. *See Samson Expl.*, 694 S.W.3d at 206–07, 204 n.38.[9]

---

[9] Plaintiff, in cursory fashion, also argues that because the bank never paid interest to him, the court should interpret the contract to call for compound interest. Doc. 41 at 6–7. But plaintiff never explains this argument, much less cites authority for it. So, the court rejects it. *See United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) (explaining that parties waive arguments "when they are advanced . . . only in a perfunctory manner" (quotation cleaned up)). Regardless, this argument alone doesn't overcome the other reasons to interpret the CD as calling for simple interest. In short, plaintiff hasn't shouldered his summary-judgment burden to show that he's entitled to judgment as matter of law on the interest calculations.

Plaintiff also argues that compounding interest is standard in the banking industry and that the court may consult industry standards to decipher ambiguous contracts. This argument is a nonstarter because plaintiff has adduced zero evidence to support his industry-standard assertion. Plaintiff cites testimony from one of defendant's employees. Doc. 41 at 7 (citing Doc. 40-4 at 39 (Leyhue Dep. 39:3–16)). But defendant's employee merely testified that defendant can roll over interest into a CD IRA if the account holder wants to avoid paying tax on the interest. *See* Doc. 40-4 at 39 (Leyhue Dep. 39:3–16). The court doesn't read that testimony to say that CDs always—or even usually—compound interest. And the court agrees with defendant; this testimony reflects current practice. It says little about the industry standard 44 years ago, when Patron's issued the CD.

Regardless, as the court has explained, the plain language of the CD calls for the bank to pay interest quarterly. This interest provision suggests that the CD calls for simple, not compound, interest. But defendant hasn't moved for summary judgment on this issue. So, the court confines its ruling. It holds only that plaintiff hasn't carried his burden to prove he's entitled to judgment as a matter of law on the method of interest and thus doesn't deserve summary judgment. The court reserves further decision on the CD's method of interest until trial.

## V.      Conclusion

The statute of limitations bars much of plaintiff's claim. So, the court grants summary judgment to defendant against plaintiff's claims for interest due before September 10, 2018. Plaintiff's claims for the CD's principal and for interest due on or after September 10, 2018, survive. The court declines to grant summary judgment based on defendant's laches defense. But the court grants defendant summary judgment against plaintiff's KCPA claim because no rational factfinder could conclude that defendant acted deceptively, as Kansas law requires. For

plaintiff's Partial Motion for Summary Judgment (Doc. 40), the court denies plaintiff's request for summary judgment on his breach-of-contract claim because a rational factfinder could conclude that he doesn't have an outstanding CD. And the court denies his request for summary judgment about how to calculate interest because he hasn't carried his burden to prove that he's entitled to judgment as a matter of law on that issue.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Bank of America, N.A.'s Motion for Summary Judgment (Doc. 38) is granted in part and denied in part, as explained in this Order.

**IT IS FURTHER ORDERED THAT** plaintiff James Roy Holliday, Jr.'s Motion for Partial Summary Judgment (Doc. 40) is denied.

**IT IS FURTHER ORDERED THAT** the Clerk of the Court seal Doc. 40-1 permanently. Plaintiff must file a redacted version of Doc. 40-1 on this case's docket within 14 days of this Order.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion to Strike (Doc. 45) is denied.

**IT IS SO ORDERED.**

**Dated this 22nd day of December, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**